316        APPELLATE COURTS OF ILLINOIS.

Shoeman v. Temple Safety Deposit Vaults et al., 189 Ill. App. 316.

the petition of appellants was properly stricken from the files, and the order appealed from is affirmed.

*Affirmed.*

**Tony Shoeman, Defendant in Error, v. Temple Safety Deposit Vaults and North Side State Savings Bank, Plaintiffs in Error.**

**Gen. No. 19,605.**

1. BAILMENT, § 1*—*when relation is created by renting safe deposit box.* Where a corporation engaged in renting safe deposit boxes rents such a box to a party, the relation of bailor and bailee arises.

2. SAFE DEPOSIT COMPANIES, § 1*—*degree of care required.* A bailee depositary for hire, engaged in the renting of safe deposit boxes, is bound to exercise ordinary care for the preservation of property intrusted to it.

3. SAFE DEPOSIT COMPANIES, § 1*—*degree of care required.* The ordinary care exacted of a corporation engaged in renting safe deposit boxes is such care as prudent men take of their own property.

4. SAFE DEPOSIT COMPANIES, § 1*—*when evidence insufficient to charge company with negligence.* Evidence *held* insufficient to charge with negligence a corporation engaged in the renting of safe deposit boxes, where plaintiff sought recovery for a thousand dollar bill alleged to have disappeared from his rented box.

5. EVIDENCE, § 23*—*right to base presumption upon a presumption.* A conclusion cannot be drawn by indulging in a presumption based upon another presumption.

6. EVIDENCE, § 477*—*what essential to justify inference from facts.* To justify an inference from facts, such facts must be established by direct evidence and not upon a presumption.

7. SAFE DEPOSIT COMPANIES, § 1*—*degree of care required.* A corporation engaged in the renting of safe deposit boxes is not required to prove a condition of perfect safety in the management of its vault.

8. SAFE DEPOSIT COMPANIES, § 1*—*degree of care required.* In

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Shoeman v. Temple Safety Deposit Vaults et al., 189 Ill. App. 316.

an action to recover damages for failure to keep property safe in a deposit box, it is erroneous to submit the cause to the jury on the theory that unless the depositary proved its safe deposit boxes absolutely impregnable it should be *held* negligent, since it was bound to use only ordinary care.

9. JUDGMENT, § 206*—*when judgment against joint defendants cannot be sustained.* Where negligence is shown as against one defendant only, a judgment rendered jointly against such defendant and a codefendant is erroneous.

Error to the Municipal Court of Chicago; the Hon. JOSEPH SABATH, Judge, presiding. Heard in this court at the October term, 1913. Reversed with finding of fact. Opinion filed October 13, 1914.

PAM & HURD, for plaintiffs in error; BURRELL J. CRAMER, of counsel.

HARRIS F. WILLIAMS, for defendant in error; ELDON M. VOTAW and W. SCOTT HODGES, of counsel.

MR. JUSTICE MCSURELY delivered the opinion of the court.

Plaintiff rented a safety deposit box in the vaults of the defendant, Temple Safety Deposit Vaults, a corporation. He brought suit to recover damages for the alleged failure of defendants to keep safe certain property deposited in said box by plaintiff, namely a one thousand dollar bill. He had judgment, which defendants seek to have reversed.

The Temple Safety Deposit Vaults is a corporation engaged in renting safety deposit boxes, and plaintiff rented such a box. The relation between the parties was that of bailor and bailee. As such bailee, or depositary for hire, defendant was bound to exercise ordinary care for the preservation of plaintiff's property intrusted to it. Ordinary care in such a case is such care as prudent men take of their own property. *Bauman v. National Safe Deposit Co.*, 124 Ill. App. 419;

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

*Mayer v. Brensinger,* 180 Ill. 110; *National Safe Deposit Co. v. Stead,* 250 Ill. 584. Plaintiff says that on or about January 11, 1911, there was in the box a one thousand dollar bill which he had previously placed therein; that when he next had occasion to go to the box, which was on or about January 31, 1911, this bill was not in the box. In his statement of claim plaintiff charges that it was stolen by someone an agent or employee of the defendants, or someone acting in collusion with an agent or employee, or one given access to the box through the carelessness and neglect of an agent and employee. The negligence charged is that defendants employed incompetent, indiscreet and dishonest persons to guard the safety deposit boxes and vaults. It is sought to prove this charge of negligence by showing the following facts: Each box was fitted with a lock to which there were three keys. One key was known as a master key and remained always in possession of someone in charge of the vaults; the other two keys, which were duplicates, were in the possession of the customer, unless the box was not rented. We do not think it necessary to advert to the evidence concerning the security of the vaults and boxes from burglary. The evidence shows that protection in this respect was entirely adequate. It also was clearly shown that after a box was rented it could not be unlocked except with the master key and one of the customer's keys operating at the same time.

The issue seems to center around the provision made for the keeping of keys before boxes were delivered to customers. It appears that these keys were kept in a wooden cupboard in the vault; that this cupboard was under lock and key and the key to it was kept on the keyring along with the master key, and this ring was kept right over the desk where the employees sat. Only the employees could get the keyring. The men having to do with the vault were a Mr. Weilbrenner, secretary and manager of the vaults, a Mr. Lipky, assistant

cashier of the defendant North Side State Savings Bank, and Boulivant and Millmore, the latter two clerks who were particularly assigned to take care of the vaults. No attempt is made to throw even suspicion on Messrs. Weilbrenner, Lipky or Millmore, but in argument plaintiff's counsel would seem to wish to have it thought that Boulivant might have been in some way responsible for the loss of the money. Without going into detail, it is sufficient for us to say that the evidence clearly shows that there was no negligence in the matter of investigating Boulivant's record prior to his employment by the defendant, and that there was nothing in that record which should cause the defendant to suspect him of any incompetency or dishonesty. As was customary, he was required to give a surety company bond in the sum of one thousand dollars.

From the facts concerning the method of keeping keys to boxes before they were delivered to customers, plaintiff attempts to deduce the theory that some one of these employees, at a time prior to October, 1910, the date the box was rented to plaintiff and the keys delivered to him, took the keys from the wooden cupboard and had a duplicate made, and that this dishonest employee then returned the keys to the cupboard, retaining the extra duplicate; that between January 11th and January 31st, surreptitiously, by the use of the master key and the extra duplicate key, this employee opened the box and stole from it the one thousand dollar bill.

While this is an ingenious and in some respects a plausible theory, it does not attain to the dignity of proof. There is no direct evidence that any employee took the money from the box. If we accept as true the statement of plaintiff that when he closed the box on January 11th the money was therein, and that it was not there on January 31st, and that plaintiff had not between these dates opened the box, there might be a presumption that an employee opened the box and took

the money. Based upon this presumption it is not unreasonable to indulge in the further presumption that the employee gained access to the box through the scheme suggested by plaintiff. On the other hand, if we reverse the argument and from the fact of the accessibility of the keys before delivery to a customer, presume that an employee procured an extra duplicate key, we might presume that the box was opened through the use of such a duplicate key in the hands of a dishonest employee. In either line of reasoning we reach our conclusion only by indulging in a presumption based upon another presumption. "No inference of fact should be drawn from premises which are uncertain. Facts upon which an inference may legitimately rest must * * * be established by direct evidence as if they were the very facts in issue; one presumption cannot be based upon another presumption." 16 Cyc. 1051. It follows, therefore, that the evidence concerning the accessibility of the keys avails nothing, whether it be considered as a conclusion of fact tending to establish negligence, or as a probative step towards the conclusion that an employee took the money. The defendant was not obliged to prove a condition of perfect safety in the management of the vault, and certainly not a condition beyond any possible speculative theory of insecurity. The case should not have gone to the jury upon the theory that unless the defendant proved its deposit boxes to be absolutely impregnable it would be held negligent. As we have said, the defendant was bound to use only ordinary care, and the evidence shows beyond any question that such a degree of care was exercised.

There is no evidence whatever that the codefendant, North Side State Savings Bank, a corporation, was in any way responsible for the management of the vaults in question, so that even if negligence on the part of the Temple Safety Deposit Vaults should be shown, a judgment jointly against it and the bank would be

erroneous; but, as we have indicated, the plaintiff has failed to prove his charge of negligence against the Temple Safety Deposit Vaults, a corporation, and the judgment will be reversed.

*Reversed with finding of fact.*

Finding of fact.—We find from the evidence that defendants were not negligent in manner and form as charged in plaintiff's statement of claim herein.